UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PNC BANK, N.A.,<br><br>    Plaintiff,<br><br>  v.<br><br>UNITED SERVICES AUTOMOBILE ASSOCIATION,<br><br>    Defendant. | CASE NO. 2:20-cv-1886<br><br>**JURY TRIAL DEMANDED**<br><br>**Electronically Filed** |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff PNC Bank, N.A. ("PNC") files this Complaint against Defendant United Services Automobile Association ("USAA") seeking declaratory judgment of non-infringement as to U.S. Patent Nos. 8,699,779 ("the '779 patent") and 8,977,571 ("the '571 patent") (collectively, the "Patents-in-Suit"). PNC hereby alleges as follows:

## NATURE OF ACTION

1. This is an action arising under the patent laws of the United States, 35 U.S.C. § 1 et. seq. and the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, seeking a declaratory judgment of non-infringement of the Patents-in-Suit and for such other relief as the Court deems just and proper.

2. USAA's patent litigation campaign has placed a cloud over PNC's products and services, and USAA's accusations against PNC of infringing the Patents-in-Suit have created a justiciable controversy between PNC and USAA. PNC seeks to resolve an actual, immediate, and substantial controversy with USAA as to the Patents-in-Suit.

## THE PARTIES

3. Plaintiff PNC is a nationally chartered banking association organized and existing under the National Bank Act, with its principal place of business at The Tower at PNC Plaza 300, Fifth Avenue Pittsburgh, Pennsylvania 15222.

4. Upon information and belief, Defendant USAA is a reciprocal inter-insurance exchange and unincorporated association organized under the laws of the State of Texas having its principal place of business at 9800 Fredericksburg Road, San Antonio, Texas 78288. On information and belief, USAA regularly conducts business throughout the United States, including within this District, and through its website at www.usaa.com and USAA Mobile smartphone applications.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to federal question jurisdiction, 28 U.S.C. §§ 1331 and 1338(a), the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, and the Patent Laws of the United States, 35 U.S.C. § 1 et seq.

6. This Court has subject matter jurisdiction over this action because, as alleged further below, an actual and justiciable controversy exists between PNC and USAA as to the alleged infringement of the Patents-in-Suit.

7. This Court has general and specific personal jurisdiction over USAA. USAA is subject to this Court's specific and/or general personal jurisdiction pursuant to due process and/or the Pennsylvania Long Arm Statute, at least because (1) USAA has minimum contacts in this forum and directed at residents of this forum and (2) the assertion of personal jurisdiction is reasonable and fair.

8. USAA filed suit against PNC, a company having its principal place of business in this District. *see United Services Automobile Ass'n v. PNC Bank, N.A.*, No. 2-20-cv-00319 (E.D. Tex.) ("PNC EDTX Case"). And USAA regularly conducts business throughout the United States, including within this District. For example, USAA has registered with the Pennsylvania Insurance Department to be a licensed insurance carrier in the Commonwealth of Pennsylvania. Ex. 1. Further, USAA provides banking products and services to customers throughout the United States, including in this District. Thus, USAA's contacts with PNC in the Western District of Pennsylvania arise from USAA's purposefully directed contacts with this District.

9. For example, on information and belief, USAA derives substantial revenue from Pennsylvania residents and residents of this District, and USAA is licensed to conduct business and sell property and casualty insurance, among other products, within Pennsylvania and this District. On information and belief, USAA owns or operates several companies licensed and registered in Pennsylvania serving as USAA's agents to conduct regular and systematic business within Pennsylvania and this District, such as USAA Casualty Insurance Company, USAA General Indemnity Company, Garrison Property and Casualty Insurance Company, and USAA Financial Insurance Agency. On information and belief, by registering itself or through its agents to conduct business in Pennsylvania, USAA is subject to general personal jurisdiction within Pennsylvania and in this District.

10. On information and belief, USAA has owned and operated at least three places of

business within Pennsylvania: (1) a USAA Fund Management center at 123 S Broad St., Philadelphia, PA 19109; (2) a USAA Investment Management center at 123 S Broad St., Philadelphia, PA 19109; and (3) a USAA Lender Services center at 1000 Commerce Drive, Suite 110, Pittsburgh, PA 15275, which is in this District. On information and belief, these centers provide or provided face-to-face personal service to USAA customers residing in Pennsylvania and in this District.

11. On information and belief, USAA actively invests in many Pittsburgh area companies and retains equity and/or a controlling interest in these companies. On information and belief, USAA also conducts substantial and systematic business throughout Pennsylvania through its limited partnerships with many Pennsylvania residents.

12. At least by providing continuous and systematic contacts within this District, including conducting substantial and regular business of providing insurance and banking products and services, USAA is subject to general personal jurisdiction in this District.

13. This Court has specific personal jurisdiction over USAA at least because of USAA's purposefully directed activities at residents of this forum, including PNC. This suit arises out of and relates to those activities.

14. On information and belief, USAA conducted extra-judicial patent enforcement by targeting alleged patent infringers' business activities in attempts to affect competition. USAA retained and employed a law firm, Epicenter Law, PC ("Epicenter") at least as its agent—which USAA exercises control over—to launch an aggressive patent licensing and enforcement campaign relating to the Patents-in-Suit and targeting financial institutions. *See, e.g.*, *Mitek Systems, Inc. v. United Services Automobile Association*, No. 3:19-cv-07223-EMC, ("Mitek lawsuit"), Dkt. 1, Ex. A (N.D. Cal. Nov. 1, 2019) (enforcement letter from Epicenter discussing USAA patent portfolio pertaining to Deposit@Mobile®); *see also* PNC EDTX Case, Dkt. 1, ¶¶ 29–35 (USAA complaint discussing USAA patent portfolio pertaining to Deposit@Mobile®). On information and belief, Epicenter, on behalf of USAA, sent over 1,000 patent licensing demand letters to financial institutions across the country. These letters explained that "USAA has asked

Epicenter Law to approach financial institutions to offer a license, on reasonable terms, as fair compensation for the continued use of this patent-protected innovation." Mitek lawsuit, Dkt. 1, Ex. A. On information and belief, at least some of these letters included one or more "claim charts" detailing alleged infringement of one or more of the patents allegedly pertaining to the USAA patent portfolio for Deposit@Mobile®. *Id.*; *see also* PNC EDTX Case, Dkt. 1, ¶ 33.  And, it is likely that out of the 1,000 patent licensing demand letters sent by Epicenter across the country that at least one letter was sent to the WDPA.

15. At least by purposefully directing activities at residents of this forum, which activities this suit arises from and relates to, and because personal jurisdiction over USAA is reasonable and fair here, USAA subjected itself to specific personal jurisdiction within this Court.

16. On information and belief, USAA's smartphone applications and website direct its customers to automated teller machines (ATMs) located in this district to conduct business with USAA. USAA's website specifically lists 645 ATMs located in the Western District of Pennsylvania as locations where customers can conduct their business with USAA, such as withdrawing cash, depositing cash, or depositing checks. Ex. 2.

17. On information and belief, USAA is organized as a reciprocal inter insurance exchange, thus, its customers/members are legally part-owners of USAA. PNC EDTX Case, Dkt. 1, ¶ 2. Additionally, USAA members (i.e., legally part-owners) in this District are insured through contracts with one another. As such, each USAA member's personal computer or personal mobile device is a USAA-approved place from which partial-owners of USAA are regularly conducting USAA business. Partial owners of USAA conduct such USAA business on personal computers and personal mobile devices in this District.

18. On information and belief, USAA has employees located in the Western District of Pennsylvania. These USAA employees have places of business in this District, including but not limited to their home offices, from which they regularly conduct USAA's business. USAA also solicits additional employees in this District and to work in this District via public job postings. Ex. 3.

19.     In view of USAA's 645 advertised ATM locations in this district, in combination with USAA's employees living and working in this District, USAA's solicitation of employees in this District, and business regularly conducted by USAA's part-owners and employees in this District, USAA regularly and purposefully conducts business in this District.

20.     At least by purposefully directing activities at residents of this forum, which activities this suit arises from and relates to, and because personal jurisdiction over USAA is reasonable and fair here, USAA is subject to specific personal jurisdiction in this District.

21.     Finding personal jurisdiction over USAA does not offend traditional notions of fair play and substantial justice. USAA has availed itself of the benefits and protections of the Commonwealth of Pennsylvania by bringing numerous suits throughout Pennsylvania courts.[1]

22.     On information and belief, venue is proper in the Western District of Pennsylvania pursuant to 28 U.S.C. § 1391(b) and (c) at least because USAA regularly conducts business in this District, USAA is subject to personal jurisdiction in this District, and a substantial part of the events giving rise to this action occurred in this District.

23.     On information and belief, venue is proper in the Western District of Pennsylvania pursuant to 28 U.S.C. § 1391(b)(1) because, for the purpose of the venue statue, an entity is deemed to reside in any judicial district in which such defendant is subject to the court's personal jurisdiction.

---

[1] *See, e.g.*, *United Services Automobile Ass'n v. Defendant*, No. 2020-001741 (Ct. of C. P., Delaware Cty.) (Feb. 18, 2020); *United Services Automobile Ass'n v. Freiling*, No. AR-19-005278, (Ct. of C. P., Allegheny Cty.) (Oct. 28, 2019); *United Services Automobile Ass'n v. Rosario-Moreda*, No. 16-3880, (Ct. of C. P., Berks Cty.) (Mar. 30, 2016); *United Services Automobile Ass'n v. Eisman*, No. 14JU06076, (Ct. of C. P., Westmoreland Cty.) (Mar. 11, 2016); *United Services Automobile Ass'n v. Frederickson*, No. CI-15-10703, (Ct. of C. P., Lancaster Cty.) (Dec. 14, 2015); *United Services Automobile Ass'n v. Tuth*, No. 15-20352, (Ct. of C. P., Berks Cty.) (Nov. 11, 2015); *United Services Automobile Ass'n v. Thompson*, No. AR-15-004905, (Ct. of C. P., Allegheny Cty.) (Oct. 14, 2015); *United Services Automobile Ass'n v. Finerghty*, No. 201504317, (Ct. of C. P., Bucks Cty.) (Dec. 14, 2015); *United Services Automobile Ass'n v. Williams*, No. 2015-12294, (Ct. of C. P., Montgomery Cty.) (June 3, 2015); *United Services Automobile Ass'n v. Omega Flex, Inc.*, No. 14-22275, (Ct. of C. P., Berks Cty.) (Dec. 5, 2014); *United Services Automobile Ass'n v. Conway*, No. 2014-008994 (Ct. of C. P., Delaware Cty.) (Oct. 9, 2014); *United Services Automobile Ass'n v. Morales*, No. 2014-17437 (Ct. of C. P., Montgomery Cty.) (June 10, 2014).

24. Additionally, on information and belief, venue is proper in the Western District of Pennsylvania pursuant to 28 U.S.C. § 1391(b)(2) because alleged infringing actions—such as licensing, selling, inducing, and using—occur in this District. A substantial part of the PNC's allegedly infringing activity took place here, making venue proper in this District under § 1391(b)(2).

## FACTUAL BACKGROUND

### The Patents-in-Suit

25. The '779 patent, entitled "Systems and Methods for Alignment of Check During Mobile Deposit," indicates on its face an issue date of April 15, 2014. A true and correct copy of the '779 patent is attached hereto as Ex. 4. Upon information and belief, USAA has a direct or indirect ownership interest in the '779 patent.

26. The '571 patent, entitled "Systems and Methods for Image Monitoring of Check During Mobile Deposit," indicates on its face an issue date of March 10, 2015. A true and correct copy of the '571 patent is attached hereto as Ex. 5. Upon information and belief, USAA has a direct or indirect ownership interest in the '571 patent.

27. USAA has previously represented that it is the assignee of all right, title, and interest in the Patents-in-Suit. *USAA v. Wells Fargo Bank*, No. 2:18-cv-00245-JRG, Dkt. 1 at ¶ 13 (E.D. Tex. Jun. 7, 2018).

### Acts Giving Rise to this Action

28. As part of PNC's own mobile application (the "PNC Mobile app"), PNC provides a mobile check deposit feature where consumers may deposit checks using their mobile devices.

29. On September 30, 2020, USAA filed suit against PNC, alleging that the PNC Mobile app, including its mobile check deposit feature and related technology, infringe U.S. Patent Nos. 10,482,432 and 10,621,559. PNC EDTX Case, Dkt. 1 (Sept. 30, 2020). On December 2, 2020, USAA sought leave to amend its complaint to add additional allegations that the PNC Mobile app, including its mobile check deposit feature and related technology, also directly

infringe the '779 and '571 patents and that PNC, through its mobile deposit feature and technology, induced infringement of and contributorily infringed the '779 and '571 patents. PNC EDTX Case, Dkt. 11 (Dec. 2, 2020); PNC EDTX Case, Dkt. 12 at ¶¶ 78, 81, 82, 88, 93, 94 (Dec. 2, 2020) That motion was mooted when, also on December 2, 2020, PNC consented to USAA's filing of its amended complaint. However, despite being free to file its amended complaint at that time and thereafter, and despite the fact that its motion for leave to amend was now moot, USAA has declined to file its amended complaint.

30. Based on the foregoing allegations, PNC has a legitimate fear that USAA will, at some point in time, seek to assert the '779 and '571 patents against it and there is a substantial controversy between PNC and USAA. PNC and USAA have adverse legal interests with respect to the question of infringement of the Patents-in-Suit. Given USAA's allegations in the PNC EDTX Case, the dispute between PNC and USAA is immediate and real.

**COUNT I**
**(Declaratory Judgment of Non-Infringement of U.S. Patent No. 8,699,779)**

31. PNC realleges the foregoing paragraphs as if fully set forth herein.

32. PNC, through the manufacture, use, and/or sale of the PNC Mobile app—which uses technology from NCR (National Cash Register) Corporation and, upon information and belief indirectly uses Mitek's MiSnap™ and related remote deposit technology—has not and does not infringe, induce infringement, or contribute to the infringement of any enforceable claim of the '779 patent, either literally or under the doctrine of equivalents.

33. PNC's customers' use of the PNC Mobile app and related remote deposit technology has not and does not infringe, induce infringement, or contribute to the infringement of any enforceable claim of the '779 patent, either literally or under the doctrine of equivalents.

34. For example, on information and belief, the PNC Mobile app and related remote deposit technology do not infringe at least because they do not "determine whether the image of the check aligns with the alignment guide" or "automatically capture the image of the check when

the image of the check is determined to align with the alignment guide," as required by independent claims 1 and 10 of the '779 patent. In addition, PNC has never had any intent to cause its customers to infringe the '779 patent.

35. The PNC Mobile app thus does not meet the elements of the '779 patent claims.

36. PNC is entitled to a declaration pursuant to 28 U.S.C. §§ 2201 and 2202 that PNC does not infringe any claim of the '779 patent.

## COUNT II
### (Declaratory Judgment of Non-Infringement of U.S. Patent No. 8,977,571)

37. PNC realleges the foregoing paragraphs as if fully set forth herein.

38. PNC, through the manufacture, use, and/or sale of the PNC Mobile app—which uses technology from NCR Corporation and, upon information and belief indirectly uses Mitek's MiSnap™ and related remote deposit technology—has not and does not infringe, induce infringement, or contribute to the infringement of any enforceable claim of the '571 patent, either literally or under the doctrine of equivalents.

39. PNC's customers' use of the PNC Mobile app and related remote deposit technology has not and does not infringe, induce infringement, or contribute to the infringement of any enforceable claim of the '571 patent, either literally or under the doctrine of equivalents.

40. For example, the PNC Mobile app and related remote deposit technology do not infringe at least because they do not "capture the image of the check [with/using] the camera when the image of the check [in the field of view] passes the monitoring criterion," as required by independent claims 1 and 9 of the '571 patent. In addition, PNC has never had any intent to cause its customers to infringe the '571 patent.

41. The PNC Mobile app thus does not meet the elements of the '779 patent claims.

42. PNC is entitled to a declaration pursuant to 28 U.S.C. §§ 2201 and 2202 that PNC does not infringe any claim of the '779 patent.

## PRAYER FOR RELIEF

WHEREFORE, PNC respectfully requests the following judgment and relief from this

Court:

A. A declaration that PNC has not infringed, and does not infringe, either directly or indirectly, any valid and enforceable claim of the Patents-in-Suit through the manufacture, use, and/or sale of PNC's products, software, or technology, either literally or under the doctrine of equivalents;

B. An order declaring that PNC is the prevailing party and that this case is an exceptional case under 35 U.S.C. § 285, and awarding PNC its costs, expenses, and reasonable attorneys' fees under 35 U.S.C. § 285 and all other applicable statutes, rules and common law, including this Court's inherent authority; and

C. Any other equitable and/or legal relief that this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

In accordance with Federal Rule of Civil Procedure 38(b), PNC demands a trial by jury on all issues so triable.

Dated: December 4, 2020

Respectfully submitted,

PNC Bank, N.A.

By:  */s/ Perry A. Napolitano*

Of Counsel:

Lionel M. Lavenue
lionel.lavenue@finnegan.com
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, LLP
Two Freedom Square
11955 Freedom Drive
Reston, VA 20190
Telephone: (571) 203-2700
Facsimile: (202) 408-4400

Perry A. Napolitano
pnapolitano@reedsmith.com
Pa. I.D. 56789
Justin J. Kontul
jkontul@reedsmith.com
Pa. I.D. 206026
Reed Smith LLP
Reed Smith Centre
225 Fifth Avenue
Pittsburgh, PA 15222
Telephone: (412) 288-7230
Facsimile: (412) 288-3063

Attorneys for Plaintiff
PNC Bank, N.A.