**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **PNC BANK, N.A.,** | |
| *Plaintiff*, | Civil Action No. 20-1886 |
| v. | |
| **UNITED SERVICES AUTOMOBILE ASSOCIATION,** | |
| *Defendant.* | |

**<u>OPINION</u>**

CONTI, Senior District Judge.

## I.   Introduction

On December 4, 2020, plaintiff PNC Bank, N.A. ("PNC") filed this declaratory judgment action under the patent laws of the United States, 35 U.S.C. § 1 et. seq., and the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202. Pending before the court is a motion to dismiss or transfer (ECF No. 13) filed by defendant United Services Automobile Services ("USAA"). This case is about whether PNC via the check depositing feature of its mobile application ("PNC's mobile app") infringed upon patents granted to USAA. USAA argues that this case should be dismissed or transferred to the United States District Court for the Eastern District of Texas because, among other things,—*before PNC initiated this case*—USAA filed in the Eastern District of Texas a patent-infringement complaint alleging that PNC infringed upon the patents that are at-issue in this case. <u>USAA v. PNC</u>, Civ. A. No. 20-319 (E.D. Tex. 2020) (the "20-319 Texas case"). In other words, USAA argues that its infringement action against PNC in the Eastern District of Texas is the "first-filed" action, and, under those circumstances, this case

should be dismissed or transferred to the Eastern District of Texas. PNC argues in response that *this* case in which it seeks a declaratory judgment against USAA is the first-filed action with respect to the patents in issue, and, in any event, the motion to transfer should be denied considering the private and public interest factors that are relevant to a transfer analysis under 28 U.S.C. § 1404(a).

There is currently a motion to transfer pending in the 20-319 Texas case in which PNC argues that the entirety of the patent infringement case pending in that court between PNC and USAA should be transferred to this court. If that motion is granted, this court would accept the transfer of USAA's entire patent infringement case (and any related cases between these parties) and ensure the expeditious resolution of the case in this court. This court, however, agrees with USAA that the amended complaint filed in the 20-319 Texas case, which contains patent infringement claims against PNC with respect to the patents at issue in this case, was filed two days *before* PNC filed the instant declaratory judgment action. Most importantly, PNC—prior to filing this case—consented to the filing of the amended complaint in the 20-319 Texas case. Under those circumstances, because some of the public and private interest factors weigh in PNC's favor, in the interests of justice this court will not transfer this case to the Eastern District of Texas; rather, the court will stay this case pending the decision of the first-filed court on the motion to transfer pending in that court.

## II.    Procedural History before this Court

On December 4, 2020, PNC initiated this action in this court against USAA by filing a complaint for declaratory judgment. (ECF No. 1.) PNC seeks a declaratory judgment that it is not infringing the patents at issue in this case. (Id.) On January 19, 2021, USAA filed a motion to dismiss or transfer the case, a brief in support of the motion, and exhibits in support of the

motion. (ECF Nos. 13, 14.) On February 9, 2021, PNC filed a response in opposition to the motion to dismiss and exhibits in support of its response. (ECF No. 30.)  On April 14, 2021, the parties filed a joint notice with this court that: (1) PNC intended to file a motion to consolidate the 20-319 Texas case with a second patent infringement action pending between USAA and PNC in the Eastern District of Texas, i.e., USAA v. PNC, Civ. A. No. 21-110 (E.D. Tex. 2021) (the "21-110 Texas case"); and (2) USAA agreed to consolidate those actions for "discovery, Markman, expert disclosures, and pre-trial briefing," but will request "back-to-back" jury trials for the two cases, and a third trial on PNC's counterclaims; and (3) Chuck Oakes ("Oakes"), a USAA declarant with respect to the pending motion to transfer, recently passed away. (ECF No. 43 at 2.)

On April 15, 2021, this court held a motion hearing with respect to the pending motion to transfer or dismiss. The parties entered exhibits into evidence. The court provided the parties an opportunity to object to proffers of evidence made by opposing counsel during the hearing. On April 29, 2021, each party filed objections to proffers made during the hearing, and on May 6, 2021, the parties filed responses in opposition to the objections.[1] (ECF Nos. 48, 49, 53, 54.)

The motion to transfer or dismiss is now ripe for disposition by the court.

### III.    Background

### A.  The Parties

USAA is a member-owned entity dedicated to the financial well-being of military members and their families by providing insurance, banking products and services, and investing services. (ECF No. 14-16 ¶ 1.) It is headquartered in San Antonio, Texas, which is in the Western

---

[1]     The court did not rely upon any proffer by counsel to which there was an objection by the opposing party, unless otherwise indicated in this opinion.

District of Texas. (H.T. 4/15/2021 (ECF No. 55) at 61.)  USAA's "Chief Technology and Design Office[,]" in which approximately 1,700 USAA employees work, is located in Plano, Texas, within the Eastern District of Texas. (ECF No. 14-16 ¶¶ 3-4.) USAA's software development for mobile deposit is handled in its Chief Technology and Design Office and the source code for mobile deposit is located at that office. (Id. ¶ 5.) USAA maintains a data center in Carrollton, Texas, located within the Eastern District of Texas, and has eight other offices throughout Texas. (Id. ¶¶ 6-7.) USAA, although it does business in the Western District of Pennsylvania, does not maintain any physical facilities in Pittsburgh, Pennsylvania. (Id. ¶ 8; ECF No. 14-17 ¶ 5.)

PNC is a banking association that traces its history to the Pittsburgh Trust & Saving Company, which was founded in Pittsburgh, Pennsylvania, in 1845. (ECF No. 33-1 ¶ 2.) PNC's headquarters is in Pittsburgh, Pennsylvania, within the Western District of Pennsylvania, where it employs thousands of people. (Id. ¶ 3.) Pittsburgh, Pennsylvania, is "the nervecenter of the development" of PNC's technology that allegedly infringes upon USAA's patents. (H.T. 4/15/2021 (ECF No. 55) at 30.) PNC has a physical presence in Texas, including in the areas of Houston (in the Southern District of Texas) and Dallas-Ft. Worth (in the Northern District of Texas). (ECF No. 14-7 at 2-3.)

### B.  The Patents in Issue

According to USAA, it invested substantial resources into researching and developing systems and methods to provide USAA's members with real-time capability to deposit checks from anywhere in the world and its efforts culminated in the industry's first commercial deposit system that allowed customers to deposit checks using their mobile phones. (ECF No. 14-5 ¶ 11.) USAA alleges that it has been granted numerous patents related to mobile check depositing, including four patents that are in-issue in the 20-319 Texas case: (1) Patent No. 8,699,779 (the

"'779 patent"); (2) Patent No. 8,977,571 (the "'571 patent"); (3) Patent No. 10,482,432 (the

"'432 patent"); and (4) Patent No. 10,621,559 (the "'559 patent"). (ECF No. 14-5 ¶ 13.)

According to PNC, PNC via its mobile app "provides a mobile check deposit feature

where consumers may deposit checks using their mobile devices." (ECF No. 1 ¶ 28.) PNC's

mobile app, among other things, uses source code from Mitek Systems ("Mitek") to

automatically take photographs of checks for depositing. (H.T. 4/15/2021 (ECF No. 55) at 22;

ECF No. 1 ¶ 32 (alleging that the PNC mobile app "uses technology from NCR (National Cash

Register) Corporation and, upon information and belief[,] indirectly uses Mitek's MiSnap™ and

related remote deposit technology").) According to PNC, Mitek is important to this case, "but

they are not the be all and end all of PNC's mobile deposit system." (H.T. 4/15/2021 (ECF No.

55) at 43.) Mitek's software is "only part of a larger system" for mobile check depositing that

USAA believes infringes upon its patents. (Id. at 43, 48.) "NCR is the company with whom PNC

contracts to get many of the functionalities that it uses to offer mobile deposit to customers, and

that includes the Mitek software; but it also includes servers and other things that NCR operates

and that NCR writes code for, which are important in doing things like processing the image of

the check and passing them on for deposit." (Id. at 45.)

### C.  Procedural History in the 20-319 Texas Case

On September 30, 2020, USAA filed suit against PNC in the United States District Court

for the Eastern District of Texas alleging that PNC's mobile app, including its mobile check

deposit feature and related technology, infringe the '432 patent and the '559 patent. (ECF No. 1 ¶

29 (citing United Services Automobile Ass'n v. PNC Bank, N.A., No. 2-20-cv-00319, Dkt. 1

(E.D. Tex. 2020).) USAA in its complaint alleged:

> The systems and methods taught by the '432 and '559 Patents solve
> technological problems associated with earlier systems used for capturing images

5

of checks. These innovations allowed USAA, for the first time in banking history, to allow users to transform general purpose consumer devices that they have in their homes or are otherwise easy to acquire into a check image capture device. This had a profound impact on USAA's members and USAA's ability to accept deposit of remote checks, including because it eliminated the need for consumers (many of whom have limited means) to acquire or access specialized check processing equipment to deposit checks remotely.

…

Among other things, the '432 patent's system and method include technological solutions to assist the customer in placing the digital camera at a proper distance from the check, present the photo of the check to the customer after the photo is taken with the digital camera, confirm that the mobile check deposit can go forward after optical character recognition is performed on the check in the photo, and check for errors before submitting the check for mobile check deposit. As another example, the '559 patent's device and method perform operations that include, among other things, receiving a digital image depicting at least [sic] portion of the check submitted by the user, applying optical character recognition to the digital image, determining an amount for the remote deposit of the check based on the optical character recognition, comparing the determined amount against a customer entered amount, optically reading a magnetic inkcharacter recognition (MICR) line depicted in the digital image, performing duplicate check detection, and determining the image is suitable for creating a substitute check and accepting the digital image. Additional details and improvements to mobile check depositing systems are further described in the patents.

…

Prior to USAA's inventions, checks were processed for deposit using specialized check scanning machines, which typically were located in bank facilities or leased to businesses for use in their back offices. High-tech equipment manufacturers sold a variety of check scanning machines that cost up to tens of thousands of dollars.

(E.D. Tex. C.A. No. 20-319, ECF No. 1 ¶¶ 15-17.)

On December 2, 2020, USAA filed an "Opposed MOTION for Leave to File to File First Amended Complaint." (E.D. Tex. C.A. No. 20-319, ECF No. 11.) The motion provided, among other things:

In its FAC, USAA seeks to add allegations that PNC infringes two additional patents—U.S. Patents Nos. 8,977,571 (the "'571 Patent"), and 8,699,779 (the "'779 Patent"). On November 24, 2020, the United States Patent Trial and Appeal Board ("PTAB") issued Final Written Decisions in inter partes review proceedings brought by another party upholding the validity of these patents. Adding the '571 and '779 Patents against PNC would result in efficiencies for both the Court and the parties, given that they involve related technology and are being asserted against the same product/service (i.e., PNC Mobile Deposit).

(Id. at 1-2.) On the same day, USAA filed the amended complaint as a separate docket entry. (E.D.

Tex. C.A. No. 20-319, ECF No. 12.)

The amended complaint included allegations with respect to the '571 and '779 patents that

are in issue in the declaratory judgment action pending before this court. USAA alleged, among

other things:

> The '571 Patent is entitled "Systems and methods for image monitoring of check during mobile deposit," and was invented by Michael Patrick Bueche Jr., Bharat Prasad, Minya Liang, Reynaldo Medina, and Charles Lee Oaks III. The application from which the '571 Patent derives its effective filing date was filed by USAA on August 21, 2009. The '571 Patent specifically relates to improvements to the remote check deposit process that include, for example, monitoring of the check with respect to a monitoring criterion, a feedback system that instructs the user regarding how to satisfy the monitoring criterion, and an automatic capture system that works in concert with the monitoring system to automatically capture a check image when the monitoring criterion is satisfied. The '571 Patent's improvements to mobile check deposit systems are further described in the specifications.
>
> …
>
> The '779 Patent is entitled "Systems and methods for alignment of check during mobile deposit," and was invented by Bharat Prasad, Minya Liang, and Reynaldo Medina. The application from which the '779 Patent derives its effective filing date was filed by USAA on August 28, 2009. The '779 Patent specifically relates to improvements to the remote check deposit process that include, among other things, projection of an alignment guide in the display of a mobile device, determination of "whether the image of the check aligns with the alignment guide," automatic capture of the image of the check when the image is determined to align with the guide, and transmittal of the captured image of the check from the camera to a depository via a communication pathway between the mobile device and the depository. This system and method solve discrete, technological problems associated with computing systems used as part of capturing images of checks for deposit on mobile devices. The '779 Patent's improvements to mobile check deposit systems are further described in the specifications. 19. The addition of the '571 and '779 Patent's improvements to remote check deposit systems at USAA and elsewhere significantly increased their efficiency and performance.
>
> …
>
> The addition of the '571 and '779 Patent's improvements to remote check deposit systems at USAA and elsewhere significantly increased their efficiency and performance

(E.D. Tex. C.A. No. 20-319, ECF No. 12 ¶¶ 17-19.)

Later the same day, PNC filed a "NOTICE OF NON-OPPOSITION AND MOOTNESS" with respect to USAA's motion to leave to file the amended complaint. (E.D. Tex. C.A. No. 20-319, ECF No. 13.) PNC's notice provided, among other things:

> On December 2, 2020, per Defendant's email request, the parties discussed two items, including (1) Plaintiff's position on Defendant's forthcoming motion to transfer, and (2) Plaintiff's position on the need for claim construction for § 101 issues. After those topics were discussed, and without prior notice, Plaintiff's counsel stated that Plaintiff would be filing an Amended Complaint and requested Defendant's consent. This was the first time Plaintiff had raised the issue, and counsel for Defendant had no opportunity to confer with its client. Plaintiff also refused any extension of time to respond to the proposed Amended Complaint based on the Christmas/Hanukkah holidays.

> As such, counsel for Defendant opposed at that time, based on the information available. Less than an hour later, Plaintiff filed its motion and an Amended Complaint. See ECF Nos. 11, 12. Only after the meet and confer ended did counsel for Defendant have an opportunity to confer with its client, and having further considered the Plaintiff's request, **<u>Defendant hereby consents</u>**. Therefore, Defendant respectfully: (i) Provides notice of non-opposition to Plaintiff's Opposed Motion for Leave to File First Amended Complaint; and (ii) Provides notice that, therefore, Plaintiff's Opposed Motion for Leave to File First Amended Complaint is now moot.

> With this Notice, Defendant respectfully requests entry of the First Amended Complaint, which will, by operation of the Federal Rules, extend the current deadline for any response until December 17, 2020 (assuming entry of the Amended Complaint on December 3, 2020), excluding any potential forthcoming extensions of time due to the upcoming Christmas/Hanukkah holidays.

(<u>Id.</u> at 1-2) (emphasis added).

The next day, i.e., December 3, 2020, USAA filed a response to PNC's notice that provided:

> At no point in time did USAA ever refuse to grant an extension of time to answer the amended complaint. USAA offered an extension beyond the Federal Rules deadline at the meet and confer and in writing before PNC filed its notice. PNC had planned to respond to the original complaint on Monday. USAA proposed that PNC take this step before USAA files the amendment so that a notice of readiness for scheduling conference can be filed and a case schedule can be set.

(E.D. Tex. C.A. No. 20-319, ECF No. 14 at 1.) Later the same day, PNC filed a reply informing the court that: (1) the motion for leave to file an amended complaint was ripe for disposition; and

(2) despite USAA's contentions that it did not oppose an extension of time for PNC to file an answer to the first amended complaint, USAA asserted to PNC that PNC was required to respond to the original complaint on December 7, 2020, and file an answer to the amended complaint in due course at a later date. (E.D. Tex. C.A. No. 20-319, ECF No. 16.) PNC reiterated in the reply that the motion for leave to file an amended complaint was ripe for disposition. (Id.)

On December 4, 2020, the court—having reviewed USAA's motion for leave and PNC's notice— granted the motion for leave to file an amended complaint. (E.D. Tex. C.A. No. 20-319, ECF No. 17 at 1.) Later the same day, USAA filed—for the second time—the amended complaint on the court's docket. (E.D. Tex. C.A. No. 20-319, ECF No. 18.)

According to the parties, as of April 6, 2021, there were five motions pending before the court in the 20-319 Texas case, including a motion to dismiss the amended complaint filed on December 18, 2020, and a motion to transfer the case to this district filed on January 7, 2021. (ECF No. 40; E.D. Tex. C.A. No. 20-319, ECF Nos. 24, 31.) On January 20, 2021, the court held a scheduling conference and set dates for claim construction and jury selection. On February 17, 2021, PNC filed a "MOTION for Order Focusing Patent Claims and Prior Art," which USAA opposed. (ECF Nos. 58, 61.) On February 24, 2021, PNC filed an answer to the amended complaint and counterclaim. (E.D. Tex. C.A. No. 20-319, ECF No. 60.)

On March 5, 2021, USAA filed a "MOTION TO SEVER DEFENDANT PNC BANK N.A.'S COUNTERCLAIMS FIVE THROUGH EIGHT," which was opposed by PNC. (E.D. Tex. C.A. No. 20-319, ECF Nos. 63, 76.) On March 27, 2021, USAA filed a motion to dismiss two of PNC's counterclaims, which PNC opposed. (E.D. Tex. C.A. No. 20-319, ECF Nos. 72, 80.)

**D.  Second Texas Case filed by USAA against PNC, 21-110 Texas Case**

On March 31, 2021, USAA filed a second lawsuit against PNC in the Eastern District of Texas, i.e., the 21-110 Texas case. USAA in the complaint alleges that PNC committed direct acts of infringement with respect to Patent No. 10,013,605 (the "'605 Patent") and 10,013,681 (the "'681 Patent"). The '605 patent and the '681 patent concern USAA's mobile deposit technology. Specifically, USAA alleges that the '605 patent claims, among other things, "improve the quality of captured check images by using the mobile device's display and camera systems to provide instructions to the user while the user is attempting to capture check images[,]" and the '681 patent's claims, among other things, "improve the quality of captured check images by using the mobile device's display and camera systems to provide instructions to the user while the user is attempting to capture check images and helping the user place the camera at the proper distance away from the check to capture valid check images for depositing." (E.D. Tex. 21-110, ECF No. 1 ¶¶ 14, 19.) According to USAA, PNC committed direct acts of infringement against the '605 and '681 patents via the PNC mobile app. (Id.) Currently pending before the court in the 21-110 Texas case are a motion to dismiss and motion to transfer to this court filed by PNC, which have been fully briefed by the parties. (E.D. Tex. 21-110, ECF Nos. 11, 13.)

### E.  Other Related Litigation According to USAA

According to USAA, in 2018, it filed two infringement actions in the Eastern District of Texas against Wells Fargo with respect to the '571 and '779 patents and the '681 patent, which is the parent to the '432 and '559 patents. (ECF No. 14 at 8.) These cases were litigated through claim construction and dispositive motions and were each tried to a jury, which found infringement. (Id.) Wells Fargo uses software developed by Mitek as a component in its mobile check depositing or "MRDC" system. (ECF No. 14 at 8 (citing Mitek Sys. V. United Serv. Auto. Ass'n, Case No. 19-cv-07223-EMC, 2020 WL 1922635, at *4 (N.D. Cal. 2020).) A representative from Mitek was the only live witness to testify about technical issues at the trial. (H.T. 4/15/2021 (ECF No. 55 at 23.)

Mitek filed a declaratory judgment action with respect to the '571 and '779 patents against USAA in the Northern District of California, which was transferred to the Eastern District of Texas pursuant to a motion to transfer filed by USAA. A motion to dismiss is pending in that case. (ECF No. 14 at 8.)

Mitek and USAA are currently litigating a discovery dispute about PNC and the '779 and '571 patents and the Mitek source code allegedly used by PNC in its check depositing technology in the Eastern District of Texas. (H.T. 4/15/2021 (ECF No. 55) at 22-23.)

## IV.    Analysis

USAA requests this court to dismiss this case, or in the alternative, to transfer it to the United States District Court for the Eastern District of Texas, because: (1) an action with respect to patents '779 and '571 was "first filed" in the Eastern District of Texas; and (2) the private and public policy considerations for transfer favor a transfer to the Eastern District of Texas. PNC argues that *this* action with respect to patents '779 and '571 was "first filed," and, in any event, the private and public policy considerations favor this case remaining here in the Western District of Pennsylvania. The court will first determine which case was first filed, and, second, will consider the factors relevant to a transfer analysis to determine whether to grant USAA's motion to transfer.

### A.   "First-Filed" Doctrine

The Court of Appeals for the Federal Circuit has explained:

> When two actions that sufficiently overlap are filed in different federal district courts, one for infringement and the other for declaratory relief, the declaratory judgment action, if filed later, generally is to be stayed, dismissed, or transferred to the forum of the infringement action. Merial Ltd. v. Cipla Ltd., 681 F.3d 1283, 1299 (Fed.Cir.2012). This "first-to-file" rule exists to "avoid conflicting decisions and promote judicial efficiency." Id. But the rule is not absolute; exceptions may be made if justified by "considerations of judicial and litigant economy, and the just and effective disposition of disputes." Elecs. for Imaging, Inc. v. Coyle, 394 F.3d 1341, 1347 (Fed.Cir.2005) (internal quotation marks

omitted). Justification for an exception may be found in "the convenience and availability of witnesses, [the] absence of jurisdiction over all necessary or desirable parties, ... the possibility of consolidation with related litigation, or considerations relating to the real party in interest." Genentech, Inc. v. Eli Lilly & Co., 998 F.2d 931, 938 (Fed.Cir.1993). Resolution of whether the second-filed action should proceed presents a question sufficiently tied to patent law that the question is governed by this circuit's law. Elecs. for Imaging, 394 F.3d at 1345–46. Application of the first-to-file rule is generally a matter for a district court's discretion, exercised within governing legal constraints. See Martin v. Franklin Capital Corp., 546 U.S. 132, 139, 126 S.Ct. 704, 163 L.Ed.2d 547 (2005); Merial, 681 F.3d at 1299.

Futurewei Techs., Inc. v. Acacia Rsch. Corp., 737 F.3d 704, 708 (Fed. Cir. 2013).

In Communications Test Design, Inc. v. Contec, LLC, 952 F.3d 1356, 1362–63 (Fed. Cir. 2020), the Court of Appeals for the Federal Circuit recently discussed the discretion of the district court with respect to the "first-to-file" rule:

> "[T]rial courts have discretion to make exceptions to this general [first-to-file] rule in the interest of justice or expediency," and we have recognized that such "exceptions are not rare." Micron Tech., Inc. v. Mosaid Techs., Inc., 518 F.3d 897, 904 (Fed. Cir. 2008) (citing Genentech, 998 F.2d at 937). For example, a district court may consider "a party's intention to preempt another's infringement suit when ruling on the dismissal of a declaratory action, but that consideration is merely one factor in the analysis." Id. (citing Genentech, 998 F.2d at 938). "Other factors include the convenience and availability of witnesses, the absence of jurisdiction over all necessary or desirable parties, and the possibility of consolidation with related litigation." Id. at 904–05.

Id. The court of appeals also recognized that:

> When one of two competing suits in a first-to-file analysis is a declaratory judgment action, district courts enjoy a "double dose" of discretion: discretion to decline to exercise jurisdiction over a declaratory judgment action and discretion when considering and applying the first-to-file rule and its equitable exceptions. See Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co., 342 U.S. 180, 183–84, 72 S.Ct. 219, 96 L.Ed. 200 (1952) (noting that, in questions of priority between similar proceedings, "an ample degree of discretion, appropriate for disciplined and experienced judges, must be left to the lower courts"). Although district courts can, in the exercise of that discretion, dispense with the first-to-file rule, there must "be sound reason that would make it unjust or inefficient to continue the first-filed action." Genentech, 998 F.2d at 938.

Id. at 1362-63.

Here, the parties dispute which action (this declaratory judgment action filed by PNC or the infringement suit in the Eastern District of Texas filed by USAA, i.e., the 20-319 Texas case ) was filed first. The relevant procedural timeline, about which there is no dispute among the parties, is as follows:

**9/30/2020:**      USAA filed a <u>Complaint</u> (sans allegations with respect to the '571 and '779 patents) in the 20-319 Texas case;

**12/2/2020:**      USAA filed the <u>Motion for Leave to File Amended Complaint</u> in the 20-319 Texas case;

**12/2/2020:**      USAA filed the <u>Amended Complaint,</u> which included allegations about the '571 and '779 patents, in the 20-319 Texas case;

**12/2/2020:**      PNC filed the <u>Notice of Mootness</u> in the 20-319 Texas case, in which it informed the court that it consented to the filing of the <u>Amended Complaint</u>;

**12/3/2020:**      USAA filed the <u>Response to the Notice of Non-Opposition and Mootness</u> in the 20-319 Texas case;

**12/4/2020**      At 4:27 p.m. (EST), PNC filed the <u>Complaint in Declaratory Judgment</u> in this court (ECF No. 30-2 ¶ 4);

**12/4/2020**      At 5:23 p.m. (EST), the court in the 20-319 Texas case issued the <u>Order</u> *granting* the Motion for Leave to File the Amended Complaint (ECF No. 30-2 ¶ 6);

**12/4/2020**      At 7:15 p.m. (EST), USAA filed the <u>Amended Complaint</u> for a second time in the 20-319 Texas case (ECF No. 30-2 ¶ 8);

**1/7/2021:**      PNC filed a <u>Motion to Transfer</u> in the 20-319 Texas case; and

**1/19/2021:**      USAA filed the pending <u>Motion to Transfer</u> in this case.

It is clear from the procedural timeline set forth above that: (1) USAA filed the amended complaint asserting allegations about the '571 and '779 patents in the 20-319 Texas case on December 2, 2020, two days before PNC filed the declaratory judgment action about the same patents in this court; and (2) PNC on December 2, 2020, two days before this case was filed, consented to the filing of the amended complaint in the 20-319 Texas case, which rendered the

motion for leave to file the amended complaint moot.[2] After PNC filed its consent, there was no

need for the amended complaint to be stricken. Indeed, the amended complaint filed on December

2, 2020, remains on the docket. Under those circumstances, the amended complaint filed in the 20-

319 Texas case was the first-filed action with respect to the patents at issue in this case.

PNC argues, however, that because it filed a "notice of non-opposition/mootness" in the

20-319 Texas case, USAA's first filing of the amended complaint had no effect and USAA was

required to file the amended complaint a second time in that court to initiate those claims in that

court. This court is not persuaded by PNC's arguments. First, there is no dispute that USAA filed

the amended complaint in the first instance two days before PNC filed the complaint for declaratory

judgment before this court. Second, as USAA points out, Local Rule CV-7(k) of the Eastern

District of Texas provides:

> **Motions for Leave to File.** Motions for leave to file a document should be filed
> separately and immediately before the document for which leave is sought. **If the
> motion for leave to file is granted, the document will be deemed to have been
> filed as of the original date of its filing.** If the motion is denied, the document will
> be struck or, in the case of motions to file a document exceeding page limitations,
> the excess pages and attachments cited only therein will not be considered by the
> court. The time for filing any responsive documents will run from the date of the
> order on the motion for leave.

E.D. Tex. Local Rule CV-7(k)[3] (emphasis added). USAA complied with the foregoing local rule

by filing its motion for leave to file an amended complaint and immediately thereafter filing the

---

[2]     When an amended complaint cannot be filed as of right, Federal Rule of Civil Procedure
15(a)(2) provides that "a party may amend its pleading only with the opposing party's written
consent or the court's leave." Here, PNC provided its written consent to the amended complaint
in its "notice of non-opposition/mootness[,]" and, thus, there was no need for the court to grant
leave for USAA to file the amended complaint.

[3]     At the hearing on the pending motion to transfer, counsel for PNC argued that Local Rule
CV-7(k) violates the Rules Enabling Act, 28 U.S.C. § 2071, which "permits federal courts to
'prescribe rules for the conduct of their business,' though '[s]uch rules shall be consistent with
Acts of Congress and rules of practice and procedure prescribed under section 2072 of this title.'"

amended complaint on the court's docket. PNC argues that its "notice of non-opposition/mootness" rendered moot the motion for leave and the first filing of the amended complaint. PNC does not cite any persuasive support for its position and the docket before the Eastern District of Texas belies

---

Nat'l Ass'n for the Advancement of Multijurisdiction Prac., (NAAMJP) v. Simandle, 658 F. App'x 127, 134 (3d Cir. 2016) (quoting 28 U.S.C. § 2071). Counsel for PNC explained:

> And here's the problem with that local rule and why I mention the Rules Enabling Act. Normally you have 14 days to oppose a motion. Let's assume the motion had been opposed. Let's assume we file an opposition. In Texas you can file replies and surreplies.
>
> So let's assume the briefing extended past 14 days, and let's assume it was then granted. Well, you only have 14 days to respond to an amended complaint, so you would have had a complaint filed effectively before leave was granted and before -- at a point in time such that your response would have been due to the complaint before the motion was granted.
>
> So then the rule goes on to say, "Well, but for purposes of calculating your time to respond, the effective date will be the date on which leave is granted." So they split the legal significance of that in a way that I don't think you should do. And I don't think Judge Gilstrap was trying to do that because he didn't say that in his order, nor did USAA seek to avail themselves of that.

(H.T. 4/15/2021 (ECF No. 55) at 37.) Local Rule CV-7(k) does not appear to violate the Rules Enabling Act. PNC had 21 days to respond to the original pleading, pursuant to Federal Rule of Civil Procedure 12(a)(1)(A)(i). The court—at PNC's request—extended the deadline for PNC's responsive pleading to the original complaint to December 7, 2020. On December 2, 2020, USAA filed the motion for leave to file an amended complaint and the amended complaint. On the same day, PNC consented to the filing of the amended complaint. On December 4, 2020, i.e., three days before PNC's responsive pleading was due, the court granted the motion for leave to file the first amended complaint. Thus, PNC was not required to respond to the original complaint. The time for PNC to respond to the amended complaint was governed by Federal Rule of Civil Procedure 15(a)(3), which provides:

> **(3)** ***Time to Respond.*** **Unless the court orders otherwise**, any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later.

Fᴇᴅ. R. Cɪᴠ. P. 15(a)(3) (emphasis added). The court cannot discern any conflict between Rule 15(a)(3) and Local Rule CV-7(k) with respect to the deadline for PNC to file an answer to the amended complaint because Rule 15(a)(3) specifically provides that a court may change the deadline for the filing of a response to the amended complaint, see id. ("Unless the court orders otherwise…"), which is the effect of the local rule.

any assertion that the motion for leave to file an amended complaint or the amended complaint were rendered moot by PNC's "notice of non-opposition/mootness." On December 4, 2020, the court granted the motion for leave to file an amended complaint, and, thus, pursuant to Local Rule CV-7(k), the amended complaint was deemed filed on December 2, 2020, i.e., the day on which USAA first filed the amended complaint. Under those circumstances, the amended complaint asserting allegations about the '571 and '779 patents was filed two days before PNC commenced the declaratory judgment action in this case.[4]

Based upon the foregoing and the pending motion to transfer in the 20-319 Texas case, consideration of the first-filed doctrine in this case weighs in favor of this court staying this case to await the decision of the court in the 20-319 Texas case on that motion because the general rule is that the court with the first-filed action should hear the dispute. Mycone Dental Supply Co. v. Creative Nail Design, Inc., No. CIV.A. 11-4380 JBS, 2012 WL 1495496, at *1 (D.N.J. Apr. 26, 2012) (explaining that the court with the first-filed action "should be the forum to determine which court is the more appropriate"); Sefac USA, Inc. v. Gray Mfg. Co., Inc., No. CV 19-5375, 2020 WL 4557062, at *1 (E.D. Pa. June 16, 2020) ("[T]he Court is persuaded the court with jurisdiction over the first-filed case should determine the application of the first-to-file rule."). The court,

---

[4]     USAA also asserts two other arguments in support of its motion to transfer: (1) the date of the amended complaint relates back to the day on which the case was initiated in the Eastern District of Texas, i.e., September 30, 2020; and (2) even if this declaratory judgment action was first filed, this case is subject to dismissal under the "anticipatory action exception" to the first-filed rule. (ECF No. 14 at 10-11.) PNC argues in response that its declaratory judgment action was first filed in this court because: (1) the Court of Appeals for the Federal Circuit does not apply the "relation back doctrine" to the first filed rule, and, even if it did, the allegations about the '571 and '779 patents do not relate back to the original complaint filed in the Eastern District of Texas; and (2) the anticipatory action exception does not apply to the facts of this case. Based upon the above discussion, USAA filed the amended complaint asserting the '571 and '779 patents before PNC filed the declaratory judgment action in this court, and, under those circumstances, the court need not consider USAA's other arguments asserted in support of its motion to transfer.

however, still needs to consider whether an exception to the general rule may be warranted based upon consideration of the relevant factors in a transfer analysis.

## B.  Private and Public Policy Considerations for Transfer

As discussed above, "[t]he general rule favors the forum of the first-filed action…." Genentech, Inc. v. Eli Lilly & Co., 998 F.2d 931, 938 (Fed.Cir.1993). The general rule, however, is "not absolute," Futurewei Techs., Inc. v. Acacia Rsch. Corp., 737 F.3d 704, 708 (Fed. Cir. 2013), and district courts should not reach their jurisdictional decisions in declaratory judgment actions (when there is a pending or impending infringement action) based upon any "categorical rules[,]" Micron Tech., Inc. v. Mosaid Techs., Inc., 518 F.3d 897, 904 (Fed. Cir. 2008). Indeed, when a district court is faced with a decision about whether to exercise jurisdiction over a declaratory judgment action when an infringement suit is pending or impending, rigid application of "[t]he first-filed suit rule…will not always yield the most convenient and suitable forum." Id. "[E]xceptions [to the general rule] may be made if justified by 'considerations of judicial and litigant economy, and the just and effective disposition of disputes.'" Futurewei, 737 F.3d at 708 (quoting Elecs. for Imaging, Inc. v. Coyle, 394 F.3d 1341, 1347 (Fed.Cir. 2005)). "In other words,…when the discretionary determination is presented after the filing of an infringement action, the jurisdiction question is basically the same as a transfer action under § 1404(a)." Micron, 518 F.3d at 904.[5]

Motions to transfer arise under 28 U.S.C. § 1404(a), which provides:

(a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

28 U.S.C.A. § 1404. One district court has explained:

---

[5]      In Micron, the declaratory judgment action was the first-filed action.

> A court considering a motion to transfer venue performs a two-part analysis. First, the court must decide whether the district to which the movant seeks to transfer the case has proper jurisdiction and venue, i.e., could the case have been brought in the transferee district in the first instance. Lawrence v. Xerox Corp., 56 F.Supp.2d 442, 450–451 (D.N.J. 1999). Second, the court applies a number of public and private factors to determine which forum is most appropriate to consider the case. Id.

Centimark Corp. v. Jacobsen, Civ. Action No. 11-1137, 2011 WL 6000719, at *6 (W.D. Pa. Nov. 30, 2011).

The Court of Appeals for the Federal Circuit reviews motions to transfer under the law of the relevant regional circuit. Micron Tech., Inc. v. Rambus Inc., 645 F.3d 1311, 1331 (Fed. Cir. 2011). The Third Circuit Court of Appeals in Jumara v. State Farm Ins. Co., 55 F.3d 873 (3d Cir. 1995), recognized that courts in analyzing whether transfer is appropriate under § 1404(a) have not limited their analyses to the "three enumerated factors in § 1404(a)" and set forth a list of private and public interest factors that a court should consider to determine whether transfer is appropriate. Jumara, 55 F.3d at 879-80. The private interest factors include:

- the plaintiff's forum preference;

- the defendant's forum preference;

- whether the claim arose elsewhere;

- the convenience of the parties as indicated by their relative physical and financial condition;

- the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and

- the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

Id. at 879.

18

The public interest factors include:

— enforceability of the judgment;

— practical considerations that could make the trial easy, expeditious, or inexpensive;

— the relative administrative difficulty in the two fora resulting from court congestion;

— the local interest in deciding local controversies at home;

— the public polices of the fora; and

— the familiarity of the trial judge with the applicable state law in diversity cases.

Id. at 879-80.

Here, the parties do not dispute that venue and jurisdiction is proper in the Eastern District of Texas. Thus, the only consideration for this court is whether transfer is proper considering the first-filed doctrine and the private and public interest factors identified by the Third Circuit Court of Appeals in Jumara.

### 1. Private Interest Factors

#### a. The parties' forum preferences

One court has explained:

"It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice should not be lightly disturbed." Shutte, 431 F.2d at 25 (internal citations and quotation marks omitted). Thus, "courts normally defer to a plaintiff's choice of forum." Jumara, 55 F.3d at 880. Indeed, "[t]he deference afforded plaintiff's choice of forum will apply as long as plaintiff has selected the forum for some legitimate reason." Cypress Semiconductor Corp. v. Integrated Circuit Sys., Inc., 2001 WL 1617186, at *2 (D.Del. Nov. 28, 2001) (internal citations omitted).

Intell. Ventures I LLC v. Altera Corp., 842 F. Supp. 2d 744, 753–54 (D. Del. 2012). On the other hand:

Where a related action is pending in another forum, the plaintiffs' choice is entitled to less deference. See QVC, 2012 WL 3155471, at *4. Where the action would

> likely be consolidated with the related action in the transferee district, transfer serves the interests of justice because it avoids potential inconsistent results. *Id.* at *5; *see also* Ferens v.  28 U.S.C. § 1404(a)qer w   2John Deere Co., 494 U.S. 516, 531, 110 S.Ct. 1274, 108 L.Ed.2d 443 (1990) ("To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent.") (quoting Continental Grain Co. v. Barge FBL–585, 364 U.S. 19, 26, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960)). The "presence of a related action in the transferee forum is such a powerful reason to grant a transfer that courts do so even where other Jumara factors, such as the convenience of the parties and witnesses, would suggest the opposite." Villari, 2009 WL 1845236, at *5 (citations omitted).

Synthes, Inc. v. Knapp, 978 F. Supp. 2d 450, 459 (E.D. Pa. 2013).

USAA argues that its preferred forum, the Eastern District of Texas, should be honored because PNC's forum choice, i.e., this court, was selected as a procedural tactic. (ECF No. 14 at 18.) PNC argues that it is the plaintiff in this case, and, therefore, its preferred forum (this court) should preside over its dispute with USAA. According to PNC, USAA's choice of forum should be provided less deference because the purpose of a venue transfer is not to shift the burden of inconvenience from one party to the other. (ECF No. 33 at 13.)

In this court, PNC is the plaintiff and its forum preference is this district. When PNC filed this declaratory judgment action, however, the amended complaint was already filed in the Eastern District of Texas. Under those circumstances, the forum preference of PNC, the plaintiff, is given less deference. Based upon the foregoing, this factor is neutral in the court's transfer analysis.

### b.  Whether the claim arose elsewhere

The parties dispute where a declaratory judgment claim arises for the purpose of a transfer analysis. USAA argues that a declaratory judgment action in this posture arises where the patent infringement suit was filed. (ECF No. 14 at 14-15 (citing Avocent Huntsville Corp. v. Aten Int'l, 552 F.3d 1324, 1332 (Fed. Cir. 2008); W. Digit. Techs., Inc. v. Bd. Of Regents of Univ. of Tex., 2011 WL 97785, at *6 (N.D. Cal. Jan. 12, 2011)). Under that interpretation, this declaratory

judgment action arose in the Eastern District of Texas. PNC correctly points out that the decisions cited by USAA are taken out of context, i.e., <u>Avocent</u> was a decision about specific jurisdiction and <u>Western Digital</u> was a decision about improper venue. (ECF No. 33 at 14.)

District courts within the Third Circuit that have considered this issue in the context of a motion to transfer filed under § 1404(a) have found that "'[a] declaratory judgment action seeking to invalidate a patent arises where the alleged infringer is located, receives the damaging charges of infringement, or suffers economic injury as a result of the charges.'" <u>Hum. Genome Scis., Inc. v. Genentech, Inc.</u>, No. CA 11-082-LPS, 2011 WL 2911797, at *7 (D. Del. July 18, 2011) (quoting <u>Millipore Corp. v. Univ. Patents, Inc.</u>, 682 F.Supp. 227, 234 (D.Del.1987)). In <u>Human Genome</u>, for example, the court explained: "As a declaratory judgment plaintiff, HGS's claim arguably arose in this District since any injury resulting from Defendants asserting their patent rights would be felt here in Delaware, where HGS is located as a result of being formed here." <u>Id.</u> Here, PNC's headquarters are in this district, and, thus, if USAA is successful in these lawsuits, PNC would suffer economic injury in this district. This factor, therefore, weighs in favor of denying the motion to transfer.

### c. The convenience of the parties as indicated by their relative physical and financial condition

One court has explained:

> In assessing the next private interest factor—"the convenience of the parties as indicated by their relative physical and financial condition"—this Court has traditionally examined a number of issues. These issues include: "(1) the parties' physical location; (2) the associated logistical and operational costs to the parties' employees in traveling to Delaware (as opposed to the proposed transferee district) for litigation purposes; and (3) the relative ability of each party to bear these costs in light of its size and financial wherewithal." <u>Audatex N. Am., Inc. v. Mitchell Int'l, Inc.</u>, C.A. No. 12–CV–139 (GMS), 2013 WL 3293611, at *4 (D.Del. June 28, 2013) (internal quotation marks and citations omitted); <u>McGee v. PetSmart, Inc.</u>, C.A. No. 12–1117–SLR–MPT, 2013 WL 1163770, at *4 (D.Del. Mar. 20, 2013) (citations omitted).

Papst Licensing GmbH & Co. KG v. Lattice Semiconductor Corp., 126 F. Supp. 3d 430, 440 (D.

Del. 2015).

USAA argues this factor weighs in favor of transfer for the following reasons:

– USAA does not have any Pennsylvania presence or witnesses near the Western District of Pennsylvania;

– USAA's current software development for its mobile check depositing technology occurs in the Eastern District of Texas (in Plano), the source of the code is located there, and approximately 50% of USAA's mobile check depositing traffic is processed in USAA's Carrolton, Texas, facility, which is also in the Eastern District of Texas;

– USAA's corporate headquarters is in San Antonio, Texas;

– nearly all USAA's inventors (Bharat Prasad, Troy Huth, Michael Bueche ("Bueche"), Minya Liang, and Reynaldo Medina) reside in Texas;

– it is inaccurate that it would be just as easy for witnesses in San Antonio, Texas to fly to Pittsburgh as it would be for them to drive to Marshall, Texas, e.g., Bueche testified that "it would have been extremely difficult for him to attend the trial [held in Pittsburgh]"; and

– PNC has many facilities in Eastern Texas and has made public statements about the business it conducts in Texas.

(ECF No. 14 at 18.)

PNC argues this factor weighs against transfer for the following reasons:

– PNC is headquartered in Pittsburgh, Pennsylvania;

– 6 of the 7 PNC employees who are most likely to have relevant knowledge about the Accused Functionality are located in this district and the other employee is in the Northern District Ohio, which is a two-hour drive from this district;

– none of PNC's employees with relevant knowledge are located in the Eastern District of Texas;

– USAA did not identify any witness who is located in the Eastern District of Texas;

– USAA did not explain why it is relevant that its mobile check depositing software development, source code, and data processing are located in the Eastern District of Texas;

– to the extent any named inventors live in San Antonio, Texas, it is more convenient for them to fly to Pittsburgh, Pennsylvania, than to drive to Marshall, Texas; and

– USAA asserts that only one witness prefers to travel to Marshall, Texas, than to Pittsburgh, Pennsylvania.

(ECF No. 33 at 14-15.)

As discussed above, the court must consider the following factors to analyze whether the convenience of the parties weighs in favor or against the transfer of this case to the Eastern District of Texas: (1) the parties' physical location; (2) the associated logistical and operational costs to the parties' employees in traveling to this district as opposed to the Eastern District of Texas; and (3) the relative ability of each party to bear these costs in light of its size and financial wherewithal.

With respect to the parties' physical location, USAA is headquartered in San Antonio, Texas, which is in the Western District of Texas, and its Chief Technology and Design Office is located within the Eastern District of Texas in Plano, Texas. According to USAA, its Chief Technology and Design Office operates in Plano, Texas, and it maintains a major data center in Carrolton, Texas, which processes approximately 50% of USAA's mobile remote deposit traffic. As PNC argues, however, USAA did not persuasively explain why it is significant to a trial in this case that its Chief Technology and Design Office and major data center are located within the Eastern District of Texas. PNC alleges that USAA has ATMs in Pennsylvania, including in the Western District of Pennsylvania, (ECF No. 48-1 at 2), but evidence produced by USAA belies that allegation; indeed, USAA adduced evidence to show that it "does not own or operate ATMs in the Pittsburgh area (or anywhere in Pennsylvania). The only ATMs in Pennsylvania accessible to USAA members are owned and operated by third parties, such as PNC, and permit only withdrawals, not deposits." (ECF No. 53-1 ¶ 2.) USAA customers within the Western District of Pennsylvania, however, use the USAA app in this district to deposit checks and use ATMs located

in this district to withdraw funds from their USAA checking accounts. PNC,[6] on the other hand, is

headquartered in Pittsburgh, Pennsylvania, and does business in Texas. Based upon the foregoing,

_____

[6]      In <u>Micron Tech., Inc. v. Rambus Inc.</u>, 645 F.3d 1311, 1332 (Fed. Cir. 2011), the parties
were both incorporated in Delaware. The court of appeals affirmed the district court's decision to
deny the defendant's motion to transfer and to hear the case in Delaware. It explained, among
other things, that because "both parties were incorporated in Delaware, they had both willingly
submitted to suit there, which weighs in favor of keeping the litigation in Delaware." <u>Id.</u> The
Third Circuit Court of Appeals has also held that pursuant 42 Pa. Cons. Stat. § 5301(a),
"registration by a foreign corporation [in Pennsylvania] carries with it consent to be sued in
Pennsylvania courts." <u>Bane v. Netlink, Inc.</u>, 925 F.2d 637, 640 (3d Cir. 1991). Courts have held
that when a party consents to be sued in a state, it cannot argue in a transfer analysis that the state
is an inconvenient forum. <u>See e.g.</u>, <u>Papst Licensing GmbH & Co. KG v. Lattice Semiconductor
Corp.</u>, 126 F. Supp. 3d 430, 440 (D. Del. 2015) ("For example, one aspect of a company's
decision to incorporate in Delaware is an agreement to submit itself to the jurisdiction of this
State's courts in order to resolve legal disputes….In light of that, it would seem incongruous were
the Court to conclude that Delaware is a decidedly inconvenient location for Defendants (all
Delaware corporations) to defend a lawsuit."); <u>Versus Evil LLC v. PNC Bank, Nat'l Ass'n</u>, No.
CV RDB-20-0001, 2020 WL 2112155, at *5 (D. Md. May 4, 2020) (holding that because PNC
was "registered to do business in Maryland and has bank branch locations in Baltimore County"
it could not show that transfer to the Western District of Pennsylvania would be most convenient
to the parties).
        Notably, courts in Texas hold that "a foreign corporation that properly complies with the
Texas registration statute only consents to personal jurisdiction where such jurisdiction is
constitutionally permissible." <u>Wenche Siemer v. Learjet Acquisition Corp.</u>, 966 F.2d 179, 183
(5th Cir. 1992). In other words, "the mere act of registering an agent [in Texas does] not create [a
corporation's] general business presence in Texas…[or] act as consent to be hauled into Texas
courts on any dispute with any party anywhere concerning any matter." <u>Id.</u>
        Here, PNC registered as a foreign corporation in Texas and conducts business there. The
court in <u>Leonard v. USA Petroleum Corp.</u>, 829 F. Supp. 882, 889 (S.D. Tex. 1993) explained:
        When a foreign corporation does business in Texas, it benefits from and is protected
        by Texas laws; it enters into a "bargain" with the state. <u>See</u> <u>International Shoe</u>, 326
        U.S. at 319, 66 S.Ct. at 159; <u>In re Mid–Atlantic Toyota Antitrust Litig.</u>, 525 F.Supp.
        1265, 1278 (D.Md.1981), modified, 541 F.Supp 62, aff'd, 704 F.2d 125 (4th Cir
        1983). By doing business in Texas, a corporation avails itself of the protections of
        Texas, and in turn, consents to jurisdiction in Texas courts. Mere registration to do
        business or appointment of an agent for service of process is not availment, and
        without availment, there is no bargain—no social compact. If a corporation does not
        do business in Texas, it derives no benefit from Texas laws. Without a received
        benefit, there is no bargain, and without a bargain, there is no due process. A
        corporation cannot consent unless it is first afforded due process.
<u>Id.</u>

this factor weighs slightly in favor of transfer because USAA does not have a physical presence here in the Western District of Pennsylvania.

With respect to the costs associated with bringing the parties to the Western District of Pennsylvania, PNC argues that 6 of its 7[7] party witnesses are located within this district and the seventh party witness is located within a two-hour drive of this district. According to PNC, all 7 witnesses are likely to have knowledge about the accused functionality in this case.

USAA argues that "nearly all" its inventors are in Texas. (ECF No. 14 at 17.) Specifically, USAA intends to present the testimony of Bueche Information Technology Executive for USAA, who is the named inventor of the '571 patent. Bueche testified as a corporate representative for USAA in the Wells Fargo trial. He lives in San Antonio, Texas, which is a six-hour drive from the

---

[7]      PNC identified 6 of its witnesses who are located within the Western District of Pennsylvania and "are most likely to have relevant knowledge regarding the Accused Functionality[:]"

- Tom Trebilock—is the senior vice president of "Digital," which oversees the Mobile and Emerging Payments team at PNC, which is responsible for the accused functionality;

- Alex Goodstein—is a digital experience product manager lead, who oversees the development of the PNC mobile app, including mobile deposit functionality for the accused functionality;

- Charles Kissick—has knowledge about PNC's deployment and maintenance of remote deposit mobile that supports the accused functionality;

- Jeremy Moore—has oversight and technical responsibility for the PNC mobile app and mobile application programming interface that facilitate the accused functionality; and

- Cooper Blake and Matthew Thomas—have knowledge about development of, deployment of, and modifications to PNC's Deposit On-Site software for PNC's corporate and institutional customers to make remote deposits.

(ECF No. 33-1 ¶ 6.) PNC also identified Daniel Andrews who—like Charles Kissick—has knowledge about PNC's deployment and maintenance of remote deposit mobile that supports the accused functionality. (Id.)

25

Eastern District of Texas. (ECF No. 14-17.) USAA also intends to present the testimony of the other inventors of the patents in-suit, Bharat Prasad, Troy Huth, Minya Liang, and Reynaldo Medina. (ECF No. 14 at 17.)

Each party intends to bring several of its employees to testify on its behalf at trial. Most of PNC's employee-witnesses are located within this district. Most of USAA's employee-witnesses are not located within the Eastern District of Texas; rather, they are located a six-hour drive away in San Antonio, Texas. This factor, therefore, weighs slightly in PNC's favor because 6 of its 7 party witnesses are located within this district.

With respect to the financial condition of the parties, both parties are large corporations and neither party provided any evidence or argument to suggest that it cannot bear the cost of litigation in either forum.

Based upon the foregoing, this factor is neutral because although the physical location of the parties weighs in favor of transfer, the location of the witnesses weighs against transfer.

### d. The convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora

The convenience of nonparty witnesses is "[o]ften cited as the most important factor in passing on a motion to transfer under Section 1404(a)." 8 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3851 (3D ED. 2012). "When ruling on a § 1404(a) motion, a court may consider the convenience of the witnesses 'only to the extent that the witnesses may actually be unavailable for trial in one fora.'" Argo v. Marriott Int'l, Inc., Civ. Action No. 13-5507, 2014 WL 2572804, at *2 (E.D. Pa. June 6, 2014) (quoting Jumara, 55 F.3d at 879). This factor "can be relevant to protecting a defendant's opportunity to put on its case with witnesses who will appear in person at the trial." ADE Corp. v. KLA-Tencor Corp., 138 F.Supp.2d 565, 569 (D. Del. 2001). While live testimony is preferable, Raynes v. Davis, Civ.

Action No. 05-6740, 2007 WL 4145102, at *4 (C.D. Cal. Nov. 19, 2007), "teleconferencing, video-depositions, and electronic filing are now ubiquitous." <u>Jacobsen</u>, 2011 WL 6000719, at *7. Convenience of witnesses has, therefore, "taken on less importance than it might have been given twenty years ago." <u>Id.</u>[8]

Relevant to the court's inquiry with respect to the convenience of witnesses is whether nonparty witnesses are subject to the court's power to subpoena witnesses, pursuant to Federal Rule of Civil Procedure 45(b), which "provides that a subpoena may be served within the District of the issuing court, within 100 miles of the place specified, within the state if the…state statute or court rule allows, or if a federal statutes so provides." <u>Stillwagon v. Innsbrook Golf & Marina, LLC</u>, Civ. Action No. 11-1338, 2013 WL 1180312 at *28 (W.D. Pa. Mar. 20, 2013) (citing Fed. R. Civ. P. 45(b)). Without evidence indicating that a witness is unwilling or unable to testify at trial,[9] however, a court should be cautious to *presume* a witness will not appear; instead, "the better

---

[8] Indeed, this court has the courtroom technology to accommodate live testimony via video conferencing.

[9] In <u>Stillwagon</u>, the court commented:

> While the risk of a case going to trial with crucial witnesses outside of the Court's subpoena power who refuse to testify is one faced by all parties to a case, here, where none of the listed potential non-party witnesses are within this Court's subpoena power, but all are presumably within the proposed transferee Court's subpoena power, this factor weighs heavily in favor of transfer. <u>Headon v. Colo., Boys Ranch</u>, No. 204CV04847LDD, 2005 WL 1126962, at *7 (E.D.Pa. May 5, 2005) (granting motion to transfer and noting that convenience of non-party witnesses is "perhaps the most important factor"); <u>Jahncke Serv., Inc. v. OKC Corp.</u>, 301 F.Supp. 866, 868 (D.Del.1969) (transferring the case because, inter alia, "nearly all the witnesses" were located in Louisiana, Texas, and Oklahoma).

<u>Stillwagon</u>, 2013 WL 1180312, at *28. In <u>Stillwagon</u>, however, the record reflected that the nonparty witnesses might be unwilling to appear at trial. The court explained: "Because Defendants implicate[d] [the nonparty witnesses] in a fraudulent scheme, they are unlikely to voluntarily travel to Pennsylvania to willingly participate in this case." <u>Id.</u> Contrastingly, the evidence presented in this case by the parties is insufficient to satisfy the burden to show nonparty witnesses are unwilling or unable to testify at trial. Unlike the nonparty witnesses in <u>Stillwagon</u>, the nonparty witnesses in this case have not been implicated in an allegedly fraudulent scheme.

approach is to recognize that witnesses have and will appear here without having to be subpoenaed." <u>ADE Corp.</u>, 138 F.Supp.2d at 570-71.[10]

Conclusory allegations about nonparty witness convenience will "not constitute evidence sufficient to establish…witnesses' unavailability." <u>Argo</u>, 2014 WL 2572804, at *2; <u>Clay v. Overseas Carriers Corp.</u>, 61 F.R.D. 325, (E.D. Pa. 1973) ("Conclusory affidavits are not helpful and are insufficient. The names and location of witnesses should be supplied. Statements should be furnished as to the materiality of testimony of alleged witnesses. Such standards are necessary if the Court is to make a rational decision."). A party bearing the burden of proving transfer is warranted under § 1404(a) must provide the court with "'affidavits, depositions, stipulations, or other documents containing facts that would tend to establish the necessary elements for a transfer." <u>Plum Tree</u>, 488 F.2d at 756-57; <u>see</u> <u>Illinois Nat'l Ins. Co. v. Banc One Acceptance Corp.</u>, Civ. Action No. 05-1260, 2008 WL 542362, at *6 (N.D. N.Y. Dec. 29, 2008) ("In this Circuit, a party moving under § 1404(a) is required to 'clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover'") (quoting <u>Hernandez v. Graebel Van Lines</u>, 761 F.Supp. 983, 987 (E.D. N.Y. 1991)); <u>Dobson Bros. Constr. Co. v. D.M. Dozers, Inc.</u>, Civ. Action No. 06-3235, 2007 WL 258309, at *4 (D. Neb. 2007) ("[T]here is no evidence that any of the defendants' out-of-state witnesses would be unwilling to come voluntarily to the District of Nebraska. Nor is there evidence suggesting that these witnesses could not testify adequately via deposition."); <u>Church of Jesus Christ of the Latter-Day Saints</u>, 476 F.Supp. 381, 383 (E.D. Pa.

---

[10] In <u>ADE Corp.</u>, the court recognized:

> Rather than starting with a presumption that witnesses may not appear and concluding the case should be transferred based on that assumption, it may make more sense to look at the facts and circumstances of each witness to see whether a subpoena is necessary. Certainly, where a witness reports that he or she is willing to appear and testify, it does not make much sense to assume he or she will not appear here and that the case should therefore be transferred.

<u>ADE Corp.</u>, 138 F.Supp.2d at 570-71.

1979) ("Although plaintiff has indicated the number of possible witnesses, he has not reduced this list to an itemization of probable witnesses. Nor has he indicated the substance or materiality of the most important witnesses' testimony or how long these witnesses will be required at trial."). "Moreover, the quality, not quantity, of the testimony of plaintiff's witnesses controls." Bartolacci, 476 F.Supp. at 383. "If the defendant has not produced such information so as to provide the Court with a rational basis for transferring an action and depriving a plaintiff of his choice of forum, then the defendant has not sustained his burden." Clay, 61 F.R.D. at 331.

USAA argues that this factor favors transfer because:

- PNC did not provide evidence that any third-party witness is "critical for trial" or cannot be produced in Texas;

- in its lawsuit against Wells Fargo, the only third party called was Mitek, which is located in San Diego, California, and Mitek representatives are willing to testify in Texas;

- PNC's other vendors are located in a variety of places, including around the world, and are "very unlikely to be at trial;"

- to the extent persons from an entity called NCR[11] which is located in Georgia, are called to testify, the two NCR employees "with mobile deposit focus" live in Texas;

- PNC's witnesses, like Virtusa, are agents of PNC, and, therefore, PNC can bring them to testify in any jurisdiction;[12] and

- Mike Morris, who had direct involvement in USAA's first commercial mobile check deposit product, lives in Union Grove, Texas, which is in the Eastern District of Texas, and is likely not willing to travel to Pittsburgh, Pennsylvania.

---

[11]     According to PNC, "Mitek developed some of the software that PNC receives from NCR…[and] PNC contracts with NCR and not Mitek, and thus it is NCR's employees who assist PNC with implementing the software." (ECF No. 33 at 9 (citing PNC Decl. ¶ 8 n.2.).)

[12]     PNC argues that USAA's "contention that PNC could bring independent contractors to trial" is erroneous because only a "party's officer, director, or managing agent" is required to appear for a party, pursuant to Federal Rule of Civil Procedure 37(d)(1)(A)(i). (ECF No. 33 at 17.) The issue is moot, however, because neither PNC nor USAA have shown that any of their agents are unavailable to testify at trial.

(ECF No. 14 at 17.)

PNC argues that this factor favors denying the motion to transfer because:

– USAA did not provide evidentiary support for its contention that the NCR employees with a "mobile deposit focus" live in Texas;

– Mike Morris is unlikely to testify at trial; and

– PNC has 7 critical[13] nonparty witnesses, four of which are located within this court's subpoena powers, that have information relevant to infringement that it may not be able to bring to trial;

– this case implicates third-party vendors other than Mitek.[14]

(ECF No. 33 at 15-17; ECF No. 43 at 2.)

At this stage, neither USAA nor PNC made a sufficient showing that any third-party witness will not be available for trial in the Western District of Pennsylvania or in the Eastern District of Texas. To the extent a witness is not willing to travel to the pertinent forum to testify, he or she can

---

[13]     According to PNC, the four third-party witnesses located within this court's subpoena power are: (1) Tawanda Chipwanya, a former PNC employee located in Pittsburgh, Pennsylvania; (2) Mayur Agrawal and Avinash Ramesh, employees of Virtusa located in Pittsburgh, Pennsylvania; and (3) Bruce Timko, an employee of NCR located in Ohio within 100 miles of this court.

PNC's third-party witnesses will testify as follows:

-   Tawanda Chipwanya, the former PNC employee, will testify about developing and maintaining the mobile computing interface at issue;

-   Mayur Agrawal and Avinash Rames, two Virtusa employees who are lead developers, will testify about their technical understating of the mobile application at issue; and

-   Bruce Timko, from NCR, will testify about the scope and function of the check image capture and processing software at issue;

(ECF No. 33 at 16 (citing PNC Decl. ¶ 8), 17); see (H.T. 4/15/2021 (ECF No. 55) at 49-50 (PNC detailing information that Mayur Agrawal and Avinash Rames will testify about to show that the PNC mobile app does not infringe upon '779 patent).)

[14]     According to PNC the Mitek witness identified by USAA, Andrew Wood, no longer works at Mitek. (ECF No. 33 at 17.)

appear via deposition or video conferencing. Neither party made a convincing showing why its witnesses were required to appear in person at trial.[15] More importantly, the unavailability of any witness expected to testify at trial in this case is based on speculation at this point; indeed, PNC argued only that it "may not" be able to bring its third-party witnesses to trial. (ECF No. 33 at 16.) Under those circumstances, this factor is neutral in the transfer analysis.

### e. the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)

The location of books and records is relevant to the court's analysis only "to the extent that the files could not be produced in the alternative forum." Jumara, 55 F.3d at 879. District courts within the Third Circuit agree that "technological advances of recent years have significantly reduced the weight of this factor in the balance of convenience analysis." Am. High-Income Trust v. AlliedSignal Inc., Civ. Action No. 00-690, 2002 WL 373473, at *5 (D.Del. Mar. 7, 2002) (cited by, inter alia, Riley v. Muhammad, Civ. Action No. 13-2766, 2014 WL 1666666, at *3 (M.D. Pa. Apr. 25, 2014)); McLaughlin v. GlaxoSmithKline, L.L.C., Civ. Action 12-3272, 2012 WL 4932016, at *5 (E.D. Pa. Oct. 17, 2012); Metalworking Lubricants Co., 634 F.Supp.2d 568, 576 (W.D. Pa. 2009)).

USAA argues this factor favors transfer because:

– the documents relating to its invention are located in Plano, Texas, which is within the Eastern District of Texas;

– Mitek's source code, which was an exhibit at the Wells Fargo trial, is publicly available at the courthouse in the Eastern District of Texas; and

---

[15]     PNC represented to the court that in-person testimony is "a more compelling presentation[,]" but did not provide the court any specifics about why it is crucial that its witnesses appear in person. (H.T. 4/15/2021 (ECF No. 55) at 45.) The issue is moot, however, because PNC did not make a sufficient showing that any of its witnesses would be unavailable for trial.

  – there is no reason to believe that PNC's documents will be produced other than via ordinary electronic discovery.

(ECF No. 14 at 19.)

PNC argues in response that the motion to transfer should be denied because:

  – the bulk of evidence is going to come from PNC as the accused infringer, and, therefore, the place where it keeps its documents weighs in favor of the case being heard in that location;

  – some documents, such as ones related to product design, may not be transferrable at lesser expense; and

  – USAA failed to show how its source code in the Eastern District of Texas is relevant to PNC's claims.

(ECF No. 33 at 18.)

This factor is neutral in the court's analysis. Neither party made a showing that books or records could not be produced in either forum, whether in hard copy or in electronic format. Indeed, counsel for PNC conceded at the hearing that PNC's and USAA's source codes are "portable." (H.T. 4/15/2021 (ECF No. 55) at 69) ("So their code is portable, just like our code is portable."). Under those circumstances, the court cannot find that either party would have any significant difficulty presenting its evidence at trial in either forum.

## 2. The Public Interest Factors

### a. Enforceability of the judgment; public policies of the fora; the familiarity of the trial judge with the applicable state law in diversity cases

"Enforceability of the judgment, public policies of the fora, and familiarity of the trial judge with the applicable state law need not be considered since the conflicts between the parties arise under federal law." Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd., No. CIV. A. 09-290, 2009 WL 3055300, at *5 (W.D. Pa. Sept. 21, 2009). In any event, neither party raised these issues in support of their positions with respect to the motion to transfer. The court does not consider these factors in its transfer analysis.

32

### b. Practical considerations that could make the trial easy, expeditious, or inexpensive

With respect to practical considerations that would make a trial easy or inexpensive, courts look to, among other things, whether there are "multiple lawsuits pending on the same subject matter and transfer would allow for consolidation of the cases before a single judge[,]" or "when there exist multiple suits concerning the same subject matter and involving the same parties." Samuels v. Medytox Solutions, Inc., Civ. Action No. 13-7212, 2014 WL 4441943, at *10 (D.N.J. Sept. 8, 2014).

USAA argues this factor weighs in favor of transfer because:

– the 20-319 Texas case involves the same patents and has substantially progressed;

– the 20-319 Texas case was filed on September 30, 2020, but PNC did not file a motion to transfer until January 2021; indeed, on December 18, 2020, one month before filing the motion to transfer, PNC filed a motion to dismiss with respect to divided infringement (which the Texas court addressed in the prior litigation); and

– the Texas court has familiarity with the '571 and '779 patents (which are at issue in this case), including the background facts and technology, because it oversaw litigation involving those patents through claim construction, discovery, dispositive motions, and a jury trial.

(ECF No. 14 at 14.)

PNC argues practical considerations support denying the motion to transfer because:

– the Court of Appeals for the Federal Circuit has instructed that preservation of judicial economy should not override factors favoring a far more convenient forum;

– this declaratory judgment action was first filed;

– PNC requests an expedited schedule before this court, and, therefore, even if the 20-319 Texas case was transferred to this court, the cases would not be delayed;

– this case's infringement contentions, claim construction, and facts will be specific to this case; and

– relying on USAA's choice of forum in other cases would preordain the Eastern District of Texas as the convenient forum for all future enforcement actions so long as the actions involve patents that overlap with previously litigated patents.

33

There are considerations which weigh in favor of transferring this case to the Eastern District of Texas. First, as explained above, PNC consented to USAA filing its amended complaint asserting patent infringement with respect to the '571 and '779 patents (which are at issue here) in the Eastern District of Texas and the amended complaint was first filed in the Eastern District of Texas. Under those circumstances, the court gives PNC's argument that the Eastern District of Texas is an inconvenient forum less weight. The parties are engaged in discovery and motions practice with respect to the '571 and '779 patents in the 20-319 Texas case; indeed, they exchanged invalidity contentions and subject-matter invalidity contentions, both parties served numerous third-party subpoenas related to these patents, third-party Mitek moved to quash the subpoena served by USAA (which sought Mitek source code relevant to the instrumentalities accused of infringing the '571 and '779 patents), and there is a fully-briefed motion to dismiss pending before that court. Based upon the foregoing, these practical considerations weigh in favor of transferring this case to the Eastern District of Texas.

### c. The relative administrative difficulty in the two fora resulting from court congestion

In analyzing court congestion under § 1404(a), "[t]he real issue is not whether a dismissal will reduce a court's congestion but whether a trial may be speedier in another court because of its less crowded docket." Gates v. Learjet Corp. v. Jensen, 743 F.2d 1325, 1336 (9th Cir. 1984); 15 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, EDWARD H. COOPER, & RICHARD D. FREER, FEDERAL PRACTICE AND PROCEDURE § 3854 (4TH ED. 2013) ("[W]hat is relevant, and undoubtedly what the courts have in mind in writing opinions that give significant weight to this element, is that getting to trial may be speedier in another district because of its less crowded docket."). Court congestion is not a decisive factor; it must be weighed against all other relevant factors, and district courts within the Third Circuit have not placed "great importance" on this factor. Andrews v.

Norfolk S. Corp., Civ. Action No. 07-2688, 2008 WL 687255, at *4 (D.N.J. Mar. 4, 2008); see High River Ltd. Partnership v. Mylan Laboratories, Inc., 353 F.Supp.2d 487, 499 (M.D. Pa. Jan. 27, 2005) ("Given that the Southern District of New York is clearly more convenient for the parties and witnesses in this case, the fact that court congestion is less in the Middle District of Pennsylvania is not enough alone to continue with the action in this district."); Penda Corp. v. STK, LLC, Civ. Action No. 03-5578, 2004 WL 2004439, at *3 (E.D. Pa. Sept. 7, 2004) ("Although the relative congestion of court dockets may be evaluated in a motion to transfer, it generally is not a factor worthy of great weight.") (collecting decisions).

USAA argues this factor favors transfer because: (1) the trial judge in the Eastern District of Texas is familiar with the patents in issue because he presided over two trials concerning those patents;[16] and (2) the time to trial in the Eastern District of Texas is 17 months, while the time to trial in this district is 31.9 months. (ECF No. 14 at 19.) PNC argues this factor does not support transfer in this case because it has proposed an expedited schedule for this case.

The court is not persuaded by USAA's arguments with respect to court congestion because the statistics it relies upon are not a reliable measure of *present* court congestion or how quickly this case would be resolved in this court. The reported statistics are from January 1, 2015, through December 31, 2020—a six-year period during which this court experienced significant judgeship vacancies.   UNITED   STATES   COURTS,   NATIONAL   JUDICIAL   CASELOAD   PROFILE,

---

[16]      PNC argues that if this court transfers this case to the Eastern District of Texas, then USAA will be able to file all its lawsuits against any party with respect to the '571 and '779 patents in that court. In deciding a transfer motion, however, a judge's familiarity with a patent based upon prior litigation against other accused infringers is not a dispositive consideration; rather, the court must perform a detailed analysis considering many factors to determine whether transfer is appropriate. In other words, a party is not entitled to a "free pass" to a forum because it previously litigated a patent against other parties in that forum. In re Vistaprint Ltd., 628 F.3d 1342, 1346–47 (Fed. Cir. 2010). Here—as explained in this opinion—this court has considered the first-filed rule and the relevant private and public interest factors in its transfer analysis to conclude that a stay of this case is appropriate.

https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile1231.2020.pdf   (last visited May 26, 2021). For example, in September 2018, six of the ten judgeships in this court were vacant, and in 2018, this court experienced 64.8[17] "Vacant Judgeship Months."[18] (Id.) This court did not receive a full complement of ten judges until September 2020. Despite significant understaffing, however, the average time from filing to disposition of a case in this court for the 12-month period ending December 31, 2020, was 5.6 months, which is the sixth fastest in the federal judiciary. (Id.) In the Eastern District of Texas, the most recently reported average time from filing to disposition of a case is 8.9 months, which is the thirty-ninth fastest in the federal judiciary. (Id.) Cases in the Eastern District of Texas commence trial faster than the cases in this district, but, as explained above, the reported statistics are not a reliable measure of present court congestion or how long it will take for this case to be tried in this court. The undersigned district court judge is a senior judge with the ability to accommodate an expedited litigation schedule as requested by the parties; indeed, the court would plan to try this case in March 2022 (or earlier if so requested). The Western District of Pennsylvania also has local patent rules intended to facilitate an expeditious resolution of patent cases before this court. U.S. DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA, LOCAL PATENT RULES,

---

[17]   During the same time period, the Eastern District of Texas experienced 42.2 Vacant Judgeship Months. UNITED STATES COURTS, NATIONAL JUDICIAL CASELOAD PROFILE, https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile1231.2020.pdf (last visited May 26, 2021).

[18]   By March 2019, the Eastern District of Texas experienced 45.0 Vacant Judgeship Months. UNITED STATES COURTS, U.S. DISTRICT COURTS–COMBINED CIVIL AND CRIMINAL FEDERAL COURT MANAGEMENT STATISTICS, https://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2020/03/31-1 (last visited March 31, 2020).

https://www.pawd.uscourts.gov/sites/pawd/files/Local%20Patent%20R%20-%2012-5-2015.pdf

(last visited on May 25, 2021).

Based upon the foregoing, this factor is neutral because trial is set to commence in the Eastern District of Texas in March 2022 and this court is willing and able to operate under a similar, expedited timeline.

### d.  The local interest in deciding local controversies at home

The Court of Appeals for the Federal Circuit has instructed:

> This factor most notably regards not merely the parties' significant connections to each forum writ large, but rather the "significant connections between a particular venue and *the events that gave rise to a suit*." See In re Acer, 626 F.3d at 1256 (emphasis added); see also Volkswagen II, 545 F.3d at 318 (explaining that this factor pertains to a forum's "connections with the events that gave rise to th[e] suit"); In re HP Inc., No. 2020-140, 826 Fed. Appx. 899, 901, 903–04 (Fed. Cir. Sept. 15, 2020) (concluding that the district court correctly recognized that the local interests factor weighed at least slightly in favor of transfer from the Eastern District of Texas ("EDTX") to NDCA because "more of the events giving rise to this suit appear to have occurred in [NDCA] than in [EDTX]—specifically, the development of the accused products").

In re Apple Inc., 979 F.3d 1332, 1345 (Fed. Cir. 2020). "While the sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue, if there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor." In re Acer Am. Corp., 626 F.3d 1252, 1256 (Fed. Cir. 2010), as amended (Jan. 13, 2011).

PNC is headquartered in the Western District of Pennsylvania in Pittsburgh, Pennsylvania, which is where decisions with respect to the alleged infringement took place; indeed, 6 of the 7 main witnesses for PNC reside in this district. Thus, this district has a significant interest in this case. In re Hoffmann-La Roche Inc., 587 F.3d 1333, 1336 (Fed. Cir. 2009) (finding a strong local interest where the claims asserted "call[ed] into question the work and reputation of several individuals residing in or near that district and who presumably conduct business in that

community"); Centimark Corp. v. Lavine, C.A. No. 11-757, 2011 WL 2941214, at *7 (W.D. Pa. July 20, 2011) ("Pennsylvania also has an interest in deciding local controversies which involve losses to a Pennsylvania corporation.").

USAA is headquartered in San Antonio, Texas, which is located in the Western District of Texas, and is where the alleged inventions behind the relevant patents were created. USAA has physical locations within the Eastern District of Texas. USAA's Chief Technology and Design Office is in Plano, Texas, and it maintains a major data center within the Eastern District of Texas. USAA, however, did not sufficiently show how the allegations of this case are specifically tied to the Eastern District of Texas.[19] Based upon the foregoing, the Western District of Pennsylvania has a stronger tie to this controversy than the Eastern District of Texas. This factor, therefore, weighs in favor of denying the motion to transfer.

## V.   Conclusion

---

[19]   The Court of Appeals for the Federal Circuit has explained that the interest of the Eastern District of Texas in a case is not significant merely because a nationwide product was sold within its borders:

> The Fifth Circuit has unequivocally rejected the argument that citizens of the venue chosen by the plaintiff have a "substantial interest" in adjudicating a case locally because some allegedly infringing products found their way into the Texas market. See Volkswagen, 545 F.3d at 317–18. Indeed this court has stressed this same point. See TS Tech, 551 F.3d at 1321. If the products were sold throughout the United States, as here, then the citizens of the venue chosen by the plaintiff "have no more or less of a meaningful connection to the case than any other venue." Id. The record shows that NOA is incorporated in Washington and has its principal place of business in the Western District of Washington. No parties, witnesses, or evidence have any material connection to the venue chosen by the plaintiff. Therefore, the record leaves only the conclusion that the local interest in Washington clearly favors transfer.

In re Nintendo Co., Ltd., 589 F.3d 1194, 1198 (Fed. Cir. 2009).

USAA's patent infringement claims about the '779 and '571 patents were first filed in the Eastern District of Texas two days before PNC filed the instant declaratory judgment action. Under the general rule, the Eastern District of Texas should preside over the parties' disputes about those patents or determine whether to transfer those disputes to this court. There are exceptions to the general rule. Indeed, in this case there are private and public interest factors that weigh in favor of maintaining this case in the Western District of Pennsylvania. District courts within the Third Circuit, however, have recognized that the court with the first-filed action "should be the forum to determine which court is the more appropriate." Mycone, 2012 WL 1495496, at *1; Sefac, 2020 WL 4557062, at *1.This court will follow the rationale of those decisions and will stay and administratively close this case pending the decision of the court in the 20-319 Texas case on the motion to transfer pending before it. Because there are factors which favor having this dispute being resolved in the Western District of Pennsylvania, if the motion to transfer pending the 20-319 Texas case is granted, this court will accept the transfer of the case (and any related cases between these parties) to this court.

BY THE COURT,

Dated: June 1, 2021            /s/ JOY FLOWERS CONTI
                                       Joy Flowers Conti
                                       Senior United States District Judge